UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

IN RE: )
ANDREW JUSTIN McSORLEY, )
)  Chapter 7
    Debtor. )
-------------------------- )  Bankruptcy No. 05-05911
JEREMY A. BROKAW; JOEL )
BROKAW and KARMA BROKAW )
)  Adversary No. 05-30213
    Plaintiffs, )
)
vs. )
)
ANDREW JUSTIN McSORLEY, )
)
    Defendant. )

## ORDER RE: COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

This matter came before the undersigned on October 5, 2006 pursuant to assignment. Steven Hahn appeared for Debtor Andrew J. McSorley. Martin Diaz appeared for Plaintiffs Jeremy, Joel and Karma Brokaw. After the presentation of evidence, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

### STATEMENT OF THE CASE

Plaintiffs, Jeremy Brokaw and his parents, contend that Debtor Andrew McSorley is not entitled to discharge their personal injury claim for physical harm and damages pursuant to 11 U.S.C. § 523(a)(6). More specifically, the Brokaws allege that on January 13, 2004, Debtor struck Jeremy with his elbow or fist during a high school basketball game. They allege that such action was willful and malicious, thereby precluding discharge.

### FINDINGS OF FACT

This adversary action stems from a personal injury suit that Plaintiffs filed against Debtor in Iowa District Court in Henry County on July 6, 2005. The suit alleges Debtor assaulted Jeremy during a high school basketball game on January 13, 2004. Debtor was in his senior year of high school, playing varsity basketball for Winfield-Mt. Union High ("Winfield"). Jeremy was a junior,

playing on the varsity basketball team for the Iowa Mennonite
School ("IMS").

Plaintiffs offered two exhibits consisting of video footage
of the game, both of which were admitted into evidence.  The
first exhibit was a recording of the entire game; the second
exhibit was a two-minute segment of the third quarter, during
which the incident in question occurred.  The two-minute segment
was viewed and analyzed during trial.  It was within this time
frame that Debtor's conduct became increasingly aggressive,
culminating with the alleged assault on Jeremy.

The footage shows Debtor "undercutting" an IMS player who
was performing a layup.  That is, the IMS player had left his
feet with the ball in close scoring proximity to the basket when
Debtor ran under him, swinging his elbow.  This action knocked
the IMS player's feet out from beneath him, causing him to fall
directly to the floor.  A referee called Debtor for a personal
foul for this conduct.

After the IMS player took his foul shots, Winfield received
possession of the ball.  During the inbounding of the ball,
Debtor can be observed forcefully swinging his elbow towards the
head of another IMS player.  Debtor did not make contact with the
player and the referee closest to the players did not see the
incident.  However, the referee testified at trial that had he
seen the Debtor's actions, he would have called a technical foul
on the Debtor due to the violent nature of his actions.

A short while later, the incident giving rise to Plaintiffs'
personal injury suit occurred.  Winfield obtained possession of
the ball after a missed shot by a member of the IMS team.
Debtor's teammates cleared the ball to their end of the court to
obtain offensive scoring position.  Jeremy was on defense,
guarding Debtor in the corner of the court, between the three
point line and the basket; the ball was not near these players
and Debtor was not in position to receive a pass.  Debtor and
Jeremy were facing each other when Debtor pivoted about 180
degrees, turning towards Jeremy's direction, while swinging in a
forward motion and striking Jeremy's head.  Because of the
quality of the film, it is impossible to see whether Debtor's
right elbow or fist struck Jeremy above his left ear.  Debtor's
momentum carried him a full 360 degrees, returning him to his
original position.  The blow knocked Jeremy to the floor.  The
referee was positioned on the baseline and testified that he

2

witnessed this activity and immediately called a technical foul
on Debtor.  Neither player reentered the game; Debtor was ejected
due to his conduct and Jeremy's injury prevented him from
continuing play.

Plaintiffs subsequently filed a personal injury lawsuit
against Debtor, seeking actual damages for medical expenses as
well as physical and mental pain.  They also seek punitive
damages.  The lawsuit was automatically stayed when Debtor filed
his bankruptcy petition.  The parties have jointly requested that
this Court determine the dischargeability of the claim should a
verdict be entered against Debtor in the personal injury suit.
Plaintiffs also request that the Court refer the suit back to the
Iowa District Court for resolution of the damages claim.

### CONCLUSIONS OF LAW

Plaintiffs assert Debtor willfully and maliciously inflicted
injury upon Jeremy, and that any amount of damages recovered
through the personal injury suit should be excepted from
discharge pursuant to § 523(a)(6) of the Bankruptcy Code.  This
section provides, in pertinent part:

(a) discharge under section 727 . . . of this title
does not discharge an individual debtor from any
debt . . .

(6) for willful and malicious injury by the debtor
to another entity or to the property of another
entity.

11 U.S.C. § 523(a)(6).  Plaintiffs have the burden of proving the
elements of their claim under § 523(a) by a preponderance of the
evidence.  Grogan v. Garner, 498 U.S. 279, 286-287
(1991).  "Willful" and "malicious" are two separate elements and
Plaintiffs must prove each in order to except the debt from
discharge.  In re Scarborough, 171 F.3d 638, 641 (8th Cir. 1999).

The "willful" element of § 523(a)(6) requires Plaintiffs to
prove "deliberate or intentional injury, not merely a deliberate
or intentional act that leads to injury."  Kawaauhau v. Geiger,
523 U.S. 57, 61 (1998) (emphasis in original).  Reckless or
negligent conduct is not sufficient.  Id. at 62.

The "malicious" element requires Plaintiffs to show Debtor's
conduct was targeted at Jeremy, at least in the sense that the
conduct was certain or almost certain to cause him harm.  In re

3

Madsen, 195 F.3d 988,989 (8th Cir. 1999).  The standard of proof
for malice does not require spite, ill will, or personal
animosity.  In re Fors, 259 B.R. 131, 137 (B.A.P. 8th Cir. 2001).

### RELEVANCE OF VIDEOTAPE EVIDENCE

      At trial, Debtor objected to the admission of Plaintiffs'
Exhibit 2; the two-minute video segment.  Debtor had no objection
to the Court viewing the entire game, but felt the two-minute
video segment was taken out of context.  Debtor asserted that
conduct captured during the two minute time frame, such as the
undercutting incident, was not relevant.  The Court noted this
objection subject to later resolution.

      Evidence is relevant if it has "any tendency to make the
existence of any fact that is of consequence to the determination
of the action more probable or less probable than it would be
without the evidence."  Fed. R. Evid. 401.  The Court has "broad
discretion in determining the relevance of a given item of
evidence."  United States v. Wilson, 787 F.2d 375, 389 (8th Cir.
1986).  However, relevant evidence "may be excluded if its
probative value is substantially outweighed by the danger of
unfair prejudice."  Fed. R. Evid. 403.  Generally, "the balance
of Rule 403 weighing should be struck in favor of admission."
Block v. R.H. Macy & Co., Inc., 712 F.2d 1241, 1244 (8th Cir.
1983).

      After having viewed the two-minute clip, as well as the
entire game, the Court concludes that Exhibit 2 is relevant and
its probative value substantially outweighs any unfair prejudice
caused by highlighting a portion of the game.  Plaintiffs assert
that Debtor's conduct was willful and malicious.  Exhibit 2 gives
insight into the Debtor's mental state in the moments before he
allegedly assaulted Jeremy.  Further, the conduct captured within
the time frame of Exhibit 2 assists in the determination of
Debtor's intent, a crucial element to determining
dischargeability in this case.  Accordingly, Debtor's objection
to Exhibit 2 is overruled.

### ANALYSIS

      Debtor argues that in deciding whether his conduct was
willful and malicious, the Court must consider the context in
which the incident occurred.  In his pre-trial statement, Debtor
asserts that Jeremy assumed the risks of the sporting event,
including the contact that occurred between the players.
However, "a team sport participant generally assumes
unintentional injuries caused by another participant; [not]

4

injuries inflicted intentionally." <u>Leonard v. Behrens</u>, 601
N.W.2d 76, 79-80 (Iowa 1999).

While incidental contact, and sometimes injury, is inherent
in any sport, the Court concludes that the injury inflicted by
Debtor was willful.  Debtor's conduct is documented by video
footage of the game.  In the moments before the incident
occurred, Debtor's behavior manifested an intent to cause injury.
He purposefully undercut an IMS player going up for a layup.
Deliberate undercutting is recognized as a dangerous fouling
technique due to the high risk that injury will be inflicted upon
the undercut player.  Additionally, Debtor swung a high elbow in
a punch-like manner at another IMS player, when the referees were
unable to see his actions.

When the incident involving Jeremy occurred, action
surrounding the ball was on the opposite side of the court.  The
two players were isolated from the center of play; Debtor's
action was not a tactical effort to position himself for a pass
or to free himself from his defender.  The video footage
illustrates that Debtor purposefully swung forcefully at Jeremy's
head.  Plaintiffs have demonstrated by a preponderance of the
evidence that Debtor was intent on inflicting "deliberate or
intentional injury." <u>Kawaauhau</u>, 523 U.S. at 61.

The Court also finds Debtor's actions were maliciously
targeted at Jeremy and they were certain to cause him harm.  <u>See
Madsen</u>, 195 F.3d at 989.  In evaluating malice, the Court may
look to the likelihood of harm in an objective sense to evaluate
Debtor's intent.  <u>In re Long</u>, 774 F.2d 875, 881 (8th Cir. 1985).
Just minutes prior to the incident in question, Debtor engaged in
deliberate undercutting, a foul categorized as dangerous because
of its high risk of injury to other players.  Moments after a
swing and a miss at another IMS player, Debtor struck Jeremy on
the head.  The force with which the Debtor delivered the blow,
especially given his proximity to Jeremy, was certain or highly
likely to inflict injury.  Thus, an objective examination of the
facts and circumstances reveals that malice was present in
Debtor's conduct.  Though the presence of "spite, ill will, or
personal animosity" is not required for a finding of malice, the
Court finds that Debtor acted out of spite and ill will towards
Jeremy because the game tape reveals that Debtor's team was
losing badly and Debtor appeared clearly frustrated with the
course of the game.  <u>Fors</u>, 259 B.R. at 137.  Accordingly, the
Court finds that Debtor possessed a specific, subjective intent
to injure and acted with malice.

Plaintiffs have met their burden to satisfy the elements of their nondischargeability claim by a preponderance of the evidence.  The evidence demonstrates that Debtor acted willfully and with malice.  Therefore, the Court holds Plaintiffs' personal injury claim is excepted from discharge under § 523 (a)(6).

**WHEREFORE,** Plaintiffs have satisfied the necessary elements of 11 U.S.C. § 523(a)(6) by a preponderance of evidence.

**FURTHER,** Plaintiffs' complaint to except debt from discharge is GRANTED.

**FURTHER,** Plaintiffs' claim is excepted from discharge under § 523(a)(6).

**FURTHER,** the automatic stay in this case is modified to allow Plaintiff to proceed in Iowa District Court in Henry County with their previously filed lawsuit against Debtor Andrew Justin McSorley.

DATED AND ENTERED: October 18, 2006

_____
PAUL J. KILBURG
BANKRUPTCY JUDGE

6